**NOT FOR PUBLICATION**

<div style="border:1px solid">
**FILED**
JAMES J. WALDRON, CLERK

**APRIL 03 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY
</div>

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 05-11966 (DHS) |
| **STOL USA, INC.**, | Judge: Donald H. Steckroth, U.S.B.J. |
| Debtor. | |

## **OPINION**

**APPEARANCES:**

Forman Holt & Eliades, LLC
Joseph M. Cerra, Esq.
218 Route 17 North
Rochelle Park, New Jersey  07662
*Counsel for Debtor*

Rubin, Kaplan & Associates
Evelyn A. Donegan, Esq.
200 Centennial Avenue
Piscataway, New Jersey 08854
*Counsel for Barell Associates, Inc.*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

The matters before the Court are a motion for summary judgment filed by the Debtor, Stol USA, Inc. ("Stol" or "Debtor") and a cross-motion seeking dismissal of the bankruptcy petition filed by Barell Associates, Inc. ("Barell").[1]  The Debtor seeks summary judgment expunging the proof of claim filed by Barell.  The Debtor first argues as a matter of law that Barell breached the lease agreement by failing to upgrade the existing sprinkler system so that the Debtor could completely use the leased premises as intended.  Additionally, the Debtor argues other breaches interfered with the Debtor's use and enjoyment of the premises so substantially that the Debtor is entitled to a total abatement of the amount of the proof of claim filed by Barell.

The Court has jurisdiction under 28 U.S.C. §§ 1334(b), 151, and 157(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).  Venue is proper under 28 U.S.C. § 1408.  The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

For the reasons that follow, both the motion and cross-motion are denied.

---

[1] The original Debtor's motion filed in this matter was for an order authorizing the Debtor to assume an unexpired lease of nonresidential property with respect to a lease agreement between the Debtor and Barell.  In response to the Debtor's motion, Barell filed a cross-motion seeking dismissal of the bankruptcy case.  This Court granted the Debtor's request to convert its pending motion to a motion for summary judgment.  Thus, currently before the Court are the Debtor's motion for summary judgment and Barell's cross-motion seeking dismissal of the bankruptcy case.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

On January 21, 2005, Debtor filed a voluntary petition for relief under 11 U.S.C. § 1101 et seq. The Debtor has remained in possession of its assets and the management of its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1008. No trustee or examiner has been appointed in this case. No committee of unsecured creditors has been formed in this case.

The underlying factual situation reveals that, prior to filing its bankruptcy petition, Stol entered into a lease agreement with Barell for real property, which agreement is the subject of protracted litigation in the state court. The litigation was commenced by Stol based on Stol's allegations that Barell continually failed to comply with its duties under the lease. Barell counterclaimed in the state court seeking past-due rent. Prior to trial in the state court, Stol filed its Chapter 11 petition.

The following relevant facts appear undisputed:

In September of 2003, Jonathan Blonde, Stol's owner, and David Cantor, a commercial realtor, began to negotiate a lease agreement with Robert Purcell, Sr., general partner of Barell for premises Barell owns in Carlstadt, New Jersey. During the negotiations, Blonde informed Purcell that his need for the lease was time sensitive. On October 9, 2003, Stol entered into the lease agreement (the "Lease") with Barell for the commercial warehouse located at 472 Barell Avenue, Carlstadt, New Jersey (the "Premises"). The Lease was amended in writing on October 15, 2003. The Lease required Barell to deliver possession of 39,832 square feet of space to Stol. The space consisted of approximately 35,000 square feet of warehouse space and 5,000 square feet of office space. Barell agreed to turn over the Premises on or about November 1, 2003.

3

Pursuant to section 7.1 of the Lease, Stol agreed that the Premises would only be used for "offices and warehousing of furniture, office furniture and office equipment" and such use would not be changed without the written consent of Barell. (Lease Agreement § 7.1). At all times prior to entering into the Lease, Purcell knew and understood that Stol intended to use the Premises for warehousing.

Barell advertised and marketed the Premises as having a 22-foot ceiling. The existing sprinkler system at the warehouse was set at a 12-foot height. At the time Purcell was marketing the Premises and negotiating the Lease with Blonde, Purcell understood or should have understood that warehousing tenants frequently inquire about the height of the building's ceiling in order to determine the maximum height at which they could store inventory. Prior to the execution of the Lease, Purcell visited Stol's former warehouse to examine how Stol was storing its inventory at that facility. During the visit, Purcell and Blonde walked through Stol's former warehouse where Purcell observed that Stol's inventory was stored on floor-to-ceiling racks of "considerable height." (Purcell Dep. at 6:1-8). Blonde advised Purcell that he would need to install the same floor-to-ceiling racks in the new warehouse. Purcell asserts he was not concerned with whether the sprinkler system was adequate for Stol's intended use and that any inadequacy was Stol's problem because the building was leased "as is." (Purcell Dep. at 23:16-24:3).

Although he existing sprinkler system was set at a 12-foot height, Purcell refused to revise or modify the sprinkler system to provide for inventory stacking to 20 feet in height. Purcell was aware that Stol could not obtain a Certificate of Occupancy for the Premises because "there was a problem with the construction of the office and there was also a problem with the storage of [Stol's] inventory." (Purcell Dep. at 29:4-24).

4

The Lease agreement provided for certain improvements to be made to the Premises. Section 2.3 of the Lease states:

> On or before the Commencement Date (as hereinafter defined) Lessor shall, at its sole cost and expense, complete the warehouse portion (excluding the loading docks) of the Lessor's Work described on "Exhibit B" attached hereto and made a part hereof. The balance of the Lessor's work shall be completed by Lessor as soon as practicable following the Commencement date.
>
> Exhibit B, Lessor's Work, listed the following items:
>
> 1. warehouse floors to be cleaned and sealed
> 2. bathrooms renovated, and to include (i) ladies room with 1 stall, (ii) office mens room with 1 stall and 1 urinal, and (iii) warehouse mens room with 2 stalls and 1 urinal
> 3. installation of 2 tailboard loading docks with 10ft. x 10ft. doors and levelors in rear
> 4. rear parking area to be cleaned to make usable for trucks
> 5. existing offices, including kitchen and bathrooms, to be renovated with 6 private offices, including kitchen and bathrooms, to be renovated with 6 private offices and 1 large bullpen area, including standard commercial grade lighting, drop ceilings, carpeting, HVAC and electric
> 6. premises to be broom clean, with mechanicals in working order and roof free of leaks.

Section 2.3 of the Lease provided that the warehouse portion of the Lessor's Work would take priority over the other work because Stol needed to install its racking system before it could move its inventory into the warehouse. In addition, Section 10.1 of the Lease provided that "the Lessor (Barell) shall be responsible for all repairs and replacements to the structural walls, floors and roof of the Demised Premises," and the term "repairs" was defined to include "all necessary replacements and renewals."

Barell began construction in the office part of the premises in early to mid-October 2003. However, a stop work order dated October 23, 2003 was issued by the New Jersey Meadowlands

Commission because Barell had not obtained the requisite permits before beginning the work. By November 1, 2003, the only portion of Barell's work that had been completed was the cleaning and sealing of the floors. In a certification filed in state court in December 2003, Purcell acknowledged that the "warehouse bathrooms were not in place as of November 1, 2003." (Blonde Cert. ¶ 31).[2]

Because of deficiencies with the sprinkler system, Stol was issued a temporary certificate of occupancy ("TCO") for the warehouse on November 21, 2003 that would expire on February 17, 2004. The TCO stated: "storage on the racks not to exceed 12 ft. height, due to fire load and the age of the existing sprinkler system."

The following contentions set forth by the Debtor in its Rule 56.1 Statement of Material Undisputed Facts have all been denied as untrue by Barell:

1. Barell agreed to repair the sprinkler system to be in operable condition pursuant to the Lease. (Debtor's Statement of Material Facts ¶ 9).

2. Barell marketed the Premises for rent by highlighting that the building had a 22-foot ceiling. (Debtor's Statement of Material Facts ¶ 12).

3. During Mr. Purcell's visit to Stol's former warehouse, Mr. Blonde showed Mr. Purcell how Stol intended to use the Premises. (Debtor's Statement of Material Facts ¶ 18).

4. During the same visit, Mr. Purcell assured Mr. Blonde that Stol could store its inventory in the same way in the Premises. Thus, the Debtor alleges, Barell was aware that Stol intended to store its

---

[2] See Certification of Jonathan Blonde in Support of the Debtor's Motion to Expunge Proof of Claim of Barell Associates, Inc. dated June 28, 2005 (hereinafter "Blonde Cert. ¶__").

inventory on the floor-to-ceiling racks prior to entering into the Lease. (Debtor's Statement of Material Facts ¶ 20).

5. The Borough of Carlstadt refused to issue a Certificate of Occupancy because the existing sprinkler system did not comply with code provisions for using the building in the manner intended or understood by the parties. Stol was only able to get a temporary certificate of occupancy ("TCO") because of Barell's failure to install a sprinkler system in conformity with code. (Debtor's Statement of Material Facts ¶ 23).

6. From November 21, 2003 through March 31, 2004, Stol spent 132 days in possession of the Premises, but was only allowed to use two thirds of the warehouse space that it had intended to use and had no use of office space. (Debtor's Statement of Material Facts ¶ 27).

7. On April 27, 2004, Stol still had use of only two thirds of the warehouse space. (Debtor's Statement of Material Facts ¶ 28).

8. The Borough of Carlstadt refused to extend the TCO because of Barell's continued failure to install a sprinkler system in conformity with code. (Debtor's Statement of Material Facts ¶ 29).

9. Barell failed to complete the Lessor's work in a timely fashion, which resulted in Stol's need to remain at its former warehouse after the expiration of its former lease for a cost of $20,000. (Debtor's Statement of Material Facts ¶ 34).

10. Barell delayed unreasonably in applying for the permits required to complete the Lessor's work. (Debtor's Statement of Material Facts ¶ 38).

11. Barell did not continue with work in the warehouse although the stop work order was only issued for the office portion of the Premises. (Debtor's Statement of Material Facts ¶ 42).

12. The Lessor's work to the warehouse was not completed by the November 1, 2003 deadline. (Debtor's Statement of Material Facts ¶ 43).

13. Because there were no working bathrooms, the warehouse was not suitable for Stol's needs and the deprivation of the bathrooms substantially interfered with Stol's enjoyment of the Premises. (Debtor's Statement of Material Facts ¶ 48).

14. The sprinkler system was a "mechanical" covered by the Lessor's work. The landlord refused to correct aspects of the sprinkler system that were not in conformity with code and to provide an adequate sprinkler system. (Debtor's Statement of Material Facts ¶ 53).

15. Mr. Purcell expressly represented that the sprinkler system was sufficient for Stol's intended use as an office furniture warehouse. (Debtor's Statement of Material Facts ¶ 54).

16. It was Barell's obligation to install the sprinkler system. (Debtor's Statement of Material Facts ¶ 56).

17. Barell's failure to do the Lessor's work necessary to conform the sprinkler system to code substantially interfered with Stol's beneficial use of the warehouse portion of the leased premises. (Debtor's Statement of Material Facts ¶ 58).

18. Barell failed to complete the remainder of the Lessor's work "as soon as practicable." (Debtor's Statement of Material Facts ¶ 61).

## **LEGAL ANALYSIS**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 7056, "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056(c) (West 2006). At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." Knauss v. Dwek, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. See Am. Marine Rail NJ, LLC v. City of Bayonne, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

The moving party must make an initial showing that there is no genuine issue of material fact. See Knauss, 289 F. Supp. 2d at 549 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." Cardenas v. Massey, 269 F.3d 251, 254-55 (3d Cir. 2001) (quoting Celotex Corp., 477 U.S. at 322). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Warner-Lambert Co. v. Teva Pharm. USA, 289 F. Supp. 2d 515, 520 (D.N.J. 2003) (quoting Anderson, 477 U.S. at 247-48). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. Furthermore, a material fact is determined by the substantive law at issue. See Crane v. Yurick, 287 F. Supp. 2d 553, 556 (D.N.J. 2003). A fact is "material" if it might affect the outcome of the suit under

the governing law. See Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. See id.

At the outset, it must be noted that the Debtor has failed to make the requisite showing that there are no genuine issues of disputed material fact which the moving party is required to do under Rule 56 of the Federal Rules of Civil Procedure. See Knauss, 289 F. Supp. 2d at 549 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Debtor's motion focused instead on the substantive issues of law, requiring the Court to determine genuine issues of material fact – not appropriate for summary judgment. See Warner-Lambert Co. v. Teva Pharm., USA, 289 F.Supp. at 520. While the legal arguments asserted by the Debtor in its motion may well have merit and be controlling at trial after determinations of fact finding, the standard for summary judgment cannot be ignored. Thus, Debtor's motion can only succeed if the Court finds that there are no genuine issues of material fact.

The Debtor contends that Barell breached the covenant of quiet enjoyment implied in every commercial lease in this State. The Debtor further argues that "as a matter of law Barell is deemed to have warranted and represented, as a necessary component of the covenant of quiet enjoyment, that the space was in fact suitable for the tenant's intended use, as specified in the leasing contract." Thus, this case ultimately turns on the language of the Lease and the understanding and intent of the parties at the time the Lease was negotiated. Fundamentally, contractual intent is a question of fact to be determined by a jury or a fact finder. See Landtect Corp. v. State Mut. Life Assurance Co., 605 F.2d 75, 79 (3d Cir. 1979). As the Court has set forth above, there is significant disagreement between the parties as to their understanding and intentions with regard to several relevant and material provisions in the Lease. Because the facts in dispute will no doubt affect the outcome of the case, they must be deemed material facts. See

10

Anderson, 477 U.S. at 248. Furthermore, construing the facts in the light most favorable to Barell, the non-moving party, as the Court must, it is evident that a determination in favor of Barell could be reached, thus rendering the dispute incapable of resolution in favor of the Debtor on a motion for summary judgment. See id. Therefore, this matter is not ripe for summary adjudication and the Debtor's motion for summary judgment must be denied.

Barell's cross-motion for summary judgment dismissing the bankruptcy petition must also be denied as it is procedurally defective. Rule 2002 of the Federal Rules of Bankruptcy Procedure provides that "all creditors . . . [be given] at least 20 days' notice by mail of: (4) in . . . a chapter 11 reorganization . . . the hearing on the dismissal of the case . . . ." Fed. R. Bankr. P. 2002 (a)(4) (West 2006). See also In re Thomas, 60 B.R. 7, 8 (Bankr. E.D.N.Y. 1986) (denying a motion to dismiss because no creditors were notified as required by Rule 2002). In this case, Barell failed to notify all creditors and therefore, Barell's cross-motion to dismiss the bankruptcy petition is denied.

Although not necessary to the determination with respect to the motion to dismiss, the Court nonetheless will address the dismissal motion on the merits. In light of the filing by the Debtor of a motion for summary judgment expunging the Barell claim, Barell advanced its motion for dismissal of the case as a sham filing in the form of a summary judgment motion. Barell attempted to use the deposition testimony of Blonde, principal of the Debtor, to advance its position that the Debtor is not a real company, but merely a shell, since it is alleged to have no assets and that Prestige Office Furniture ("Prestige") manipulates the Debtor's income and thus is the true operating company. Barell argues that the bankruptcy of Stol is a sham filing and that the purpose of filing was solely to defeat the claim for rent that was overdue when the state court proceedings were set for trial.

11

Succinctly stated, Barell advances three reasons why the Chapter 11 should be dismissed as a sham filing. First, the filing of the Chapter 11 was simply to forestall payment of rent that was owed. Second, Barell submits that the Debtor is a shell corporation, has no assets, is not viable, and is being used by the principal to avoid financial obligations. Thus, Barell contends, the Debtor cannot meet its obligations on a going-forward basis. Third, in the alternative, Barell avers that the Debtor has sufficient assets to pay its creditors and therefore is not in need of bankruptcy protection.

In opposition, the Debtor challenged Barell's arguments by stating that Blonde, who does own Prestige, the entity for whom the Debtor sells goods on consignment, has every legal right to minimize personal business risk and that Barell failed to show by any specific evidence that corporate formality between the various entities has not been observed. In particular, Stol argues that Barell makes no showing the Debtor's filing lacks a reorganization purpose. In particular, while the Debtor's schedules reflect receivables exceeding liabilities by almost $35,000, what is overlooked is that the schedules include a liability for an unknown amount in connection with the liability to Barell and that substantial counsel fees of $86,000 may be due and owing by the Debtor because of the state court litigation.

11 U.S.C. § 1112(b) permits a court, in its discretion, to dismiss a Chapter 11 petition on the request of a party in interest. It provides in part:

> . . .the court may convert a case under this chapter [Chapter 11] to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is the best interest of creditors and the estate, for cause . . .

In addition to a court's discretion to dismiss a Chapter 11 case for "cause," the court may also dismiss a case for the ten reasons enumerated in the statute. See 11 U.S.C. § 1112(b)(1)-(10) (West

12

2006). The list is not exhaustive and courts should "consider other factors as they arise." First Jersey Nat'l Bank v. Brown (In re Brown), 951 F.2d 564, 572 (3d Cir. 1991).

A debtor's lack of good faith constitutes cause for dismissal of a Chapter 11 petition. In re SGL Carbon Corp., 200 F.3d 154, 160-62 (3d Cir. 1999); Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.), 849 F.2d 1393 (11th Cir. 1988). It is well established that a debtor's bad faith filing of a bankruptcy petition is sufficient "cause" to warrant dismissal of a case under § 1112(b). In re Ravick Corp., 106 B.R. 834, 842 (Bankr. D.N.J. 1989). See also In re Newark Airport/Hotel Ltd. P'ship, 156 B.R. 444, 448 (Bankr. D.N.J. 1993) holding that (lack of good faith is sufficient "cause" for the dismissal or conversion of a Chapter 11 case). The movant has the initial burden to present a prima facie case alleging bad faith; once achieved, the burden shifts to the debtor to prove that the petition was filed in good faith. Cont'l Ill. Nat'l Bank & Trust Co. V. Century City, Inc. (In re Century City, Inc.), 8 B.R. 25, 30-31 (Bankr. D.N.J. 1980); In re Dunes Casino Hotel, 63 B.R. 939 (D.N.J. 1986).

The reason for imposing a good faith requirement was stated by the Third Circuit as follows:

> It is easy to see why courts have required Chapter 11 petitioners to act within the scope of the bankruptcy laws to further a valid reorganizational purpose. Chapter 11 vests petitioners with considerable powers--the automatic stay, the exclusive right to propose a reorganization plan, the discharge of debts, etc.--that can impose significant hardship on particular creditors. When financially troubled petitioners seek a chance to remain in business, the exercise of those powers is justified. But this is not so when a petitioner's aims lie outside those of the Bankruptcy Code.

[In re SGL Carbon Corp., 200 F.3d at 165-66.]

A determination of a debtor's motive for filing centers upon the totality of the circumstances. Id. at 165; In re Newark Airport/Hotel Ltd. P'ship, 156 B.R. at 448; In re Cent. Jersey Airport Servs, LLC,

13

282 B.R. 176, 180 (Bankr. D.N.J. 2002). The existence of bad faith depends not on the presence of any one specific factor, but upon a combination of factors, after careful examination of all the facts of a debtor's case. In re Taylor, 103 B.R. 511, 521 (D.N.J. 1989).

Courts have dismissed cases as bad faith filings for a variety of reasons, including but not limited to: (1) when the petition is filed merely as a litigation tactic; (2) when the petition was filed solely to frustrate the legitimate efforts of other parties to enforce their rights; (3) when the debtor lacks a valid reorganizational purpose; and (4) when the debtor's sole motive is to avoid a contract. See In re SGL Carbon Corp. 200 F.3d at 165-66. However, Chapter 11 filings arising out of a two-party dispute or triggered by state court proceedings do not per se constitute bad faith filings. In re Ravick Corp., 106 B.R. at 850.

Here, the underlying facts, even viewed in the light most favorable to the moving party, fail to demonstrate a sham or bad-faith filing by the Debtor. Clearly, corporations may have common shareholders yet be distinct legal entities. Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967), cert. denied, 290 U.S. 988, 88 S.Ct. 1183, 19 L.Ed. 2d 1291 (1968). Moreover, Barell has a strong burden of establishing, by the preponderance of the evidence, that the Debtor corporation was a sham designed to avoid liability and created for the purpose of abuse of the corporate fiction and the immunity such corporate form carries with it. See Zubick, 884 F.2d at 271, n.2. In short, Barell has not overcome its burden that the Debtor's petition was filed in bad faith.

Certainly, the touchstone of a good faith filing is whether the Debtor was experiencing serious financial or managerial difficulties at the time of the filing. See In re SGL Carbon Corp., 200 F.3d at 164. In the instant matter, there can be no dispute that the Debtor was facing pending state court litigation that

posed a serious threat to its long-term viability and its efforts in seeking reorganization. Barell's argument that the Debtor had assets in excess of its liabilities is simply not borne out by the facts. While the schedules might seem to show excess assets, Barell has filed a significant claim which, together with outstanding counsel fees, adds an additional $224,000 in liability to the bankruptcy estate. This clearly supports a finding that the Debtor's assets did not exceed its liabilities and certainly its debts could not be paid when due at the time of filing.

This case is most unlike In re Integrated Telecom Express, Inc., 284 F.3d 108 (3d Cir. 2004) upon which Barell relies. In Integrated, the Third Circuit found the debtor's Chapter 11 filing to be lacking in good faith because the debtor had ceased business, had no intention of reorganizing, had sufficient assets on hand to pay all claims, and was in no financial distress at the time of filing. The filing was made to take advantage of existing Bankruptcy Code provisions allowing for rejection of leases. The Third Circuit found there was no bankruptcy purpose in such a filing. That is not analogous to the totality of the circumstances here. In this case, the circumstances evidence an ongoing state court litigation, the Debtor burdened with claims in excess of $224,000 in connection with litigation on its lease, and without assets sufficient to pay that sum. This Debtor filed while still in ongoing business operations and there appears to be a clear intention to continue to operate. In fact, thirteen months after filing its petition, the Debtor continues to operate under the protection of the Bankruptcy Code and is moving toward reorganization.

For the reasons stated above, the Court shall deny the cross-motion seeking dismissal of the Chapter 11 proceeding.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

                                s/   **Donald H. Steckroth**

                                DONALD H. STECKROTH
                                UNITED STATES BANKRUPTCY JUDGE

Dated:  April 3, 2006